UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MALAYA **DAVIS**, AARON HAYES, JAMES HAYES, MARSHAWN MCCARREL, and MICHAEL SAMPSON | |
| *Plaintiffs,* | CIVIL ACTION |
| v. | CASE NO._____ |
| JOHN **GRINDER**, and WILL MATSUNAGA, | |
| *Defendants.* | |

# COMPLAINT

1. Before Michael Brown, Eric Garner, Tamir Rice, Walter Scott, and Freddie Gray lost their lives to police violence, Plaintiffs, and other social justice activists of color joined together under the auspices of the Freedom Side and Dream Defenders to stage a peaceful demonstration in Nashville, Tennessee. Their purpose was to deliver the 2014 National Governors Association (NGA) meeting a simple message: Our Lives Matter.

2. Upon learning of Plaintiffs' planned demonstration from the Tennessee Department of Safety and Homeland Security's Tennessee Fusion Center, the Tennessee Highway Patrol (THP) added the demonstration to its "Threat Briefing" and targeted Plaintiffs and other demonstrators for law enforcement scrutiny. Using "non-traditional techniques to monitor crowds and identify potential criminal **or** disruptive behavior," THP's Special Investigations Bureau "infiltrated" the demonstration "for the purpose of stopping or minimizing disruptive behavior aimed at conference attendees and/or functions."

3. When Plaintiffs attempted to deliver their message, Defendants put them in jail.

4. After Davidson County Judicial Commissioner Steve Holzapfel determined the arrests occurred without probable cause, Defendants continued to imprison Plaintiffs for several more hours. During this time, Defendants sought additional evidence—namely, the testimony of an Omni Hotel manager—to bring a second prosecution against Plaintiffs for the same crimes based on the same flawed arrests. Only after Commissioner Holzapfel denied the warrants a second time did Defendants finally agree to release Plaintiffs from custody.

## JURISDICTION AND VENUE

5. This Court has federal question jurisdiction over the subject matter of Plaintiffs' constitutional claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the subject matter of Plaintiff's pendent claims under Tennessee tort law pursuant to 28 U.S.C. § 1367.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this District.

## PARTIES

7. Plaintiff **Malaya Davis** is a 25 year-old African-American resident of Cleveland, Ohio, and a graduate of Wright State University. She is an organizer for the Ohio Student Association, a youth-led statewide organization whose mission is to empower young people across Ohio.

8. Plaintiff **Aaron Hayes** is a 21 year-old African-American resident of Kent, Ohio. He is a Political Science student who—having been raised in a large city, and having witnessed inequality and racism toward people of African descent and other marginalized people firsthand—is dedicated to improving race relations and living

conditions in the United States. Mr. Hayes dedicates his organizing to dismantling a long-term system of racial oppression and hatred that has done so much to damage a race of beautiful people not just in America, but across the world.

9. Plaintiff **James Hayes** is a 25-year-old African-American resident of Columbus, Ohio. He organizes with the Ohio Student Association. Growing up, James learned quickly about inequality and injustice, and in college, he helped found the Ohio Student Association in order to achieve transformational change. Since then, James has been working with young people across Ohio and the nation to stand up against the policies that are affecting his generation. Mr. Hayes's work has centered around ending the mass criminalization and the systematic mistreatment of young people of color.

10. Plaintiff **MarShawn McCarrel** is a 22 year-old African-American resident of Columbus, Ohio. Mr. McCarrel is a teacher at the Children's Defense Fund Freedom Schools, located on-site in his neighborhood and in a juvenile prison a short distance away. He is an organizer with the Ohio Student Association, and a founder of the organization Pursuing Our Dreams, which operates according to the motto that people have to build community in order to move community.

11. Plaintiff **Michael Sampson** is a 26 year-old African-American resident of Washington, D.C. He holds a bachelor's degree from Florida State University in Tallahassee, Florida, and he works as a union organizer. A co-founder of the Dream Defenders—a black and brown youth organization that addresses systemic inequities—Michael has organized the Tallahassee Chapter of the Dream Defenders, and he has also organized his community around education cuts and immigration reform. Mr. Sampson joined with the Freedom Side as an organizer with the Dream Defenders in 2014. He

traveled to the National Governor's Association meeting in July 2014 to protest against what he considered to be the racist and repressive political agenda of the NGA.

12. Defendant **John Grinder** was at all times relevant to this Complaint a Sergeant with the Tennessee Highway Patrol ("THP"). At all times relevant to this Complaint, Defendant Grinder acted under color of state law. He is sued in his individual capacity.

13. Defendant **Will Matsunaga** was at all times relevant to this Complaint a Sergeant with the THP. At all times relevant to this Complaint, Defendant Matsunaga acted under color of state law. He is sued in his individual capacity.

## FACTUAL ALLEGATIONS

14. Plaintiffs are young, African-American student organizers who worked under the auspices of the Freedom Side and Dream Defenders to organize a demonstration of approximately 40 people at Legislative Plaza on July 12, 2014. Plaintiffs then led a silent march to the NGA Meeting at the Omni Hotel in Nashville, TN.

15. Upon arriving at the Omni Hotel, Plaintiffs spoke with Defendant Grinder and requested to meet with an NGA representative so that they could deliver their message that criminalization of black and brown youth, living wage jobs, equal access to high-quality education, and democratic rights should be added to the NGA's agenda.

16. Defendant Grinder was the Team Leader of the THP Delta 1 "Direct Action/Arrest" Team assigned to the Omni Hotel. Defendant Matsunaga was the Team Leader of the THP Delta 2 "Direct Action/Arrest" Team.

17. Defendant Grinder spoke directly with Plaintiffs and their co-organizers regarding their request to meet with a representative of the National Governors Association.

18. After conferring with NGA officials, Defendant Grinder informed Plaintiffs that no representative of the NGA would meet with Plaintiffs.

19. Defendant Grinder then ordered all demonstrators to confine their activities to the public sidewalk directly in front of the Omni Hotel's entrance.

20. During the course of Defendant Grinder's discussions with Plaintiffs, they expressed their desire and intention to leave a banner at the doorstep of the Omni Hotel in the hopes that it would be delivered to NGA representatives.

21. Plaintiff Davis, believing that she had received permission from Defendant Grinder to leave the banner, attempted to place it at the foot of the line of THP officials who had formed a barrier between demonstrators and the Omni's entrance.

22. When Plaintiff Davis attempted to leave the banner, she and all four other Plaintiffs were arrested for setting foot on private property.

23. Neither Plaintiff Davis nor any other Plaintiff was instructed to step back across the line before THP initiated the arrests.

24. THP officers physically pulled Plaintiff Sampson off of the edge of the public sidewalk and onto private property to effectuate his arrest.

25. Defendant Grinder physically arrested Plaintiff McCarrel and ordered other members of THP's Delta Direct Action/Arrest Team to arrest the other four Plaintiffs.

26. Defendant Grinder ignored Plaintiff McCarrel's complaint that his handcuffs were too tight, and that they were cutting off circulation around McCarrel's wrists.

27. Defendant Grinder supervised the drafting and presentation of arrest affidavits for all five Plaintiffs to Judicial Commissioner Steve Holzapfel.

28. Commissioner Holzapfel refused to sign all five arrest warrants, finding that the arrests lacked probable cause.

29. Defendant Grinder, together with Defendant Matsunaga, knew that Commissioner Holzapfel rejected all five of the arrest affidavits for lack of probable cause.

30. Defendant Grinder intentionally failed to facilitate Plaintiffs' timely release from custody after Commissioner Holzapfel rejected THP's affidavits.

31. Instead, in concert with Defendant Matsunaga, Defendant Grinder ordered that Plaintiffs would remain in custody for several more hours while he and other THP officials initiated a second prosecution against Plaintiffs and attempted to secure additional evidence against them, including the testimony of a senior Omni Hotel official.

32. Approximately four to five hours after arresting Plaintiffs, Defendant Grinder appeared with Defendant Matsunaga in person before Commissioner Holzapfel to present the same legally deficient arrest affidavits a second time.

33. Defendant Grinder, in concert with Defendant Matsunaga, initiated a second prosecution of Plaintiffs in the absence of probable cause, depriving them of their liberty.

34. Commissioner Holzapfel again rejected the affidavits Defendants Grinder and Matsunaga presented for want of probable cause.

35. After just over five hours of unlawful detention, Plaintiffs were finally released from the Davidson County Criminal Justice Center.

36. The THP and the Metropolitan Nashville Police Department's Flex Squad surveilled and followed Plaintiffs and other demonstrators to ensure that they would not regroup and return to the Omni Hotel. This surveillance included ascertaining the travel itinerary of at least one Plaintiff.

## CLAIMS FOR RELIEF
### COUNT I – FALSE IMPRISONMENT IN VIOLATION OF THE FOURTH AMENDMENT
### 42 U.S.C. § 1983 –ALL PLAINTIFFS AGAINST BOTH DEFENDANTS

37. All previous paragraphs are incorporated as though fully set forth herein.

38. Defendants Grinder and Matsunaga deprived each of the Plaintiffs of their liberty for a period of roughly five hours by detaining them without probable cause.

39. Defendants' detention of Plaintiffs prior to Commissioner Holzapfel's probable cause determination violated their clearly established right under the U.S. Constitution's Fourth Amendment to be free from detention unsupported by a warrant or probable cause.

40. After Commissioner Holzapfel held the THP lacked probable cause to arrest Plaintiffs, Defendants Grinder and Matsunaga violated Plaintiffs' clearly established right under the Fourth and Fourteenth Amendment to be free from pre-trial investigatory detention for the impermissible purpose of collecting additional evidence.

41. As a direct and proximate result of Plaintiffs' false imprisonment by Defendants, Plaintiffs suffered nominal and actual damages, including, but not limited to, loss of liberty, humiliation and emotional distress.

### COUNT II – MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH AMENDMENT
### 42 U.S.C. § 1983 ALL PLAINTIFFS AGAINST BOTH DEFENDANTS

42. All previous paragraphs are incorporated as though fully set forth herein.

43. Defendants Grinder and Matsunaga detained and attempted to charge all five Plaintiffs with criminal trespass after Commissioner Holzapfel rejected the affidavits THP submitted for lack of probable cause.

44. Defendants Grinder and Matsunaga attempted to gather additional evidence against Plaintiffs—specifically, securing the testimony of a manager of the Omni Hotel—

to justify Plaintiffs' warrantless arrests while continuing to detain Plaintiffs even after Commissioner Holzapfel rejected the affidavits THP submitted for lack of probable cause.

45. Defendants' actions deprived Plaintiffs of their liberty.

46. The charges against Plaintiffs were ultimately resolved, and Plaintiffs' cases were terminated in their favor, when Commissioner Holzapfel once again rejected Defendants' attempts to prosecute Plaintiffs in the absence of probable cause.

47. Defendants acted with legal malice by falsely arresting, falsely imprisoning, and falsely charging Plaintiffs with criminal trespass. Specifically, the purpose of Defendants' prolonged, unlawful detention of Plaintiffs after the first judicial determination that Plaintiffs had been arrested without probable cause was to ensure that Plaintiffs would not return to the Omni Hotel to continue their political demonstration.

48. Defendants' actions therefore violated Plaintiffs' clearly established Fourth and Fourteenth Amendment right to be free from malicious prosecution.

49. As a direct and proximate result of Defendants' malicious prosecution of Plaintiffs, Plaintiffs suffered damages, including, but not limited to, loss of liberty, humiliation, and emotional distress.

**COUNT III – EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT
42 U.S.C. § 1983 DEFENDANT MCCARREL AGAINST DEFENDANT GRINDER**

50. All previous paragraphs are incorporated as though fully set forth herein.

51. Defendant Grinder handcuffed Plaintiff McCarrel in a manner that caused him extreme pain and cut off circulation to his wrists.

52. Plaintiff McCarrel repeatedly complained to THP officers that his handcuffs were too tight and were hurting him.

53. After having his handcuffs removed, Plaintiff McCarrel's wrists bore marks for several days from where the handcuffs had been clamped.

54. Defendant Grinder's placement of handcuffs on Plaintiff McCarrel in a manner that was so tight as to cause him physical pain, combined with Defendant Grinder's and other THP officers' refusal to adjust Plaintiff McCarrel's handcuffs even after Plaintiff McCarrel complained of their tightness, violated Plaintiff McCarrel's clearly established right under the Fourth and Fourteenth Amendment to be free from excessive force.

55. As a direct and proximate result Defendant Grinder's unconstitutional actions, Plaintiff McCarrel suffered damages, including, but not limited to, nominal damages, physical pain and suffering, humiliation, and emotional distress.

### COUNT IV – UNLAWFUL RETALIATION IN VIOLATION OF THE FIRST AMENDMENT 42 U.S.C. § 1983 ALL PLAINTIFFS AGAINST BOTH DEFENDANTS

56. All previous paragraphs are incorporated as though fully set forth herein.

57. Plaintiffs engaged in speech, activity and conduct protected by the First and Fourteenth Amendments when they organized and led a demonstration in front of the location of the National Governors Association's annual meeting.

58. Defendants engaged in adverse action by arresting, falsely imprisoning, and maliciously prosecuting Plaintiffs.

59. Defendants' arrest, unlawful detention, and malicious prosecution of Plaintiffs would chill a person of ordinary firmness from continuing to engage in constitutionally protected speech.

60. Defendants' arrest, unlawful detention, and malicious prosecution of Plaintiffs was motivated in part by Plaintiffs' role as organizers of the demonstration that Plaintiffs had assembled outside the Omni Hotel.

61. Plaintiffs' constitutionally protected speech was a substantial motivating factor in Defendants' decisions to unlawfully detain, gather additional evidence against, and prosecute Plaintiffs.

62. As a result of Defendants' retaliation against Plaintiffs for engaging in constitutionally protected speech, activity and conduct, Plaintiffs suffered damages, including but not limited to, presumed damages for interference with constitutionally protected speech, loss of liberty, humiliation, and emotional distress.

### COUNT V – NEGLIGENCE

63. All previous paragraphs are incorporated as though fully set forth herein.

64. Defendants Grinder and Matsunaga had a duty under Tennessee common law to ensure that Plaintiffs were not deprived of their liberty for any period longer than that authorized by state law.

65. Defendants breached that duty by failing to facilitate their release after Commissioner Holzapfel determined that their arrests were unsupported by probable cause.

66. Defendants' breach of their duty to Plaintiffs was the actual and proximate cause of Plaintiffs' loss of liberty.

67. As a result of Defendants' breach of their duty to Plaintiffs, Plaintiffs suffered damages including, but not limited to, loss of liberty, humiliation, and emotional distress.

//

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully seek the following relief:

A. Enter a declaratory judgment that Defendants violated Plaintiffs' clearly established rights under the United States Constitution and civil rights laws;

B. Award Plaintiffs nominal damages;

C. Award Plaintiffs compensatory damages in an amount to be determined at trial;

D. Award Plaintiffs punitive damages in an amount to be determined at trial;

E. Award Plaintiffs pre-judgment and post-judgment interest as allowed by law;

F. Award Plaintiffs reasonable costs, expenses and attorneys' fees pursuant to 42 U.S.C. § 1988; and

G. Grant such further relief as this Court deems just and appropriate.

Date: July 13, 2015

Respectfully submitted,

/s/ R. Andrew Free

**R. ANDREW FREE, TN BPRN 030513**
414 Union Street, Suite 900
Nashville, TN 37219
(615) 244-2202 (office)
(615) 244-4345 (fax)
Andrew@ImmigrantCivilRights.com

**Daniel Horwitz, TN BPRN 032176**
1803 Broadway, Suite 616
Nashville, TN 37203
(310) 948-9354
Daniel.a.horwitz@gmail.com